The next case on the calendar is Richardson v. New York City Board of Education. May it please the court, my name is Jay Itkowitz, I represent Rosemary Richardson, and we're here before you to seek vindication of her rights as a 30-year tenured employee of the Department of Education who retired without any charges pending against her, but yet secretly DOE issued a determination, which it never notified her about, which took away her rights to prospective employment with the Department of Education. The court below, relying on the Abramson case and the Finley case, which are both cases that emanate from this court, stated that she had no rights to prospective employment because she had resigned, that she had no rights once that happened. But none of the cases, neither of those cases, involved people with well-established tenure rights, and my answer- But does a retired person have tenure rights? A retired person, the structure of 3020A of the education law, the CSA contract which protected her, and the Chancellor's regulations give a retired, tenured employee continuing rights even after retirement. What are those rights? None of them are a right to be hired by a consultant or to get security clearance from the Department of Education, are they? Not specifically. However, under the Chancellor's regulation, a person with tenure who retires, which that's definitional, you can't retire unless you have tenure. So a person who retires with tenure has the right, for instance, to work as a substitute. It's a funny kind of right. I mean, it says the Chancellor or the, whatever, the official in charge can appoint that person to be a substitute teacher. It's not really written that way, with respect, Your Honor. Let's look at it. Fine. Let's look at it. It says a retired employee may perform substitute service. Correct. But only if they're invited. They have no right to say, I can come back and do this. I want to work there. Put me in place. With respect, I don't think that that's the way it works. The right is of the employee or the retiree to be employed, to put themselves on a list where they can appear and work as a substitute teacher. But the Chancellor makes a peremptory decision after somebody retires and says, oh, well, you can work or not work. It gives them the right to work, okay? And once they have that Wait, wait. There's a big difference. If I'm a teacher with tenure, I can't be told, don't come back next year. We don't want you anymore. But if I am a retired teacher, the principal or whoever hires substitutes or assigns them to particular places has no obligation to call me ever. That's right. And certainly has no, and is there any reason why if the principal has a cadre of licensed substitute teachers available and a group of retired teachers available, is there any principal LE that says that the principal AL has to pick this person rather than that person? No, clearly not. So if the person making the decision said, oh, I have a bunch of people here. There's Lynch. I don't want him because he did something bad once that was never adjudicated. I never had a hearing on. The principal has unfettered discretion to decide to hire Itkowitz instead of Lynch for the substitute gig? Well, the principal does have unfettered discretion. And if we take into account the real life of the way the school system works, there are thousands of schools throughout the city. And each principal has the right, presumably, to hire or to put somebody, to call somebody. Then what's the protected property interest of prospective employment then? The prospective property interest of prospective employment is the right to be on that list and to be considered. And the structure, even under this case, under 3020A, since this investigation commenced, while Ms. Richardson was employed, and in fact, the period of time in which under the contract they were supposed to bring that investigation to a conclusion should have occurred before she retired. Let's stick with the same issue for a moment. Before trying to understand what actually happens, and I'm interested in your point, is there evidence in the record, are you telling me there's evidence in the record that there is a master list of retired teachers eligible for substitute jobs or of all people eligible for substitute jobs that individual principals would consult? Well, I think the converse is true. What the regulation itself says, if you retire when there are charges filed against you, you don't have the right to work as a substitute. It says that specifically. It doesn't say if you retire when there's an incomplete, when there was an investigation at some point in your career that you're deprived of this right to work as a substitute. So the way this works, this is a blacklist. Well, I hear the fairness argument. I understand the fairness argument that this is not a case where somebody retired, or at least a reasonable jury could conclude it's not a case where somebody retired while they knew they were under the gun, where a charge had been filed and they jump out, they retire before it can be adjudicated. It's not that kind of case, and that does create a fairness issue, but I'm trying to understand the operation of this prospective employment. Is there any evidence about how it does work? You're saying that in practice, this blacklisting terminated her right to be a substitute teacher because in reality, there's a list that she's not on or can't get on. But of course, did she ever try to get on? Is there an actual list? Is there any evidence that that's how it works? What there is is an ineligible list, and if you're on the ineligible list, you can't work as a substitute. That much is clear. So she was deprived of the right to be a substitute teacher, which is not a right that, that's not something she ever applied for. She applied for something different, a job somewhere else. But from a constitutional analysis, the right to work as a substitute is a right. Okay, and once you have a property right, then there's a constitutional implication of being deprived of that right without notice, and that's- The advisory says, and I want to make sure I understand the record, that you did not rely on the chancellor's regulation below. Is that correct? It wasn't argued before, below, and I will admit that, and we weren't, frankly, aware of it at that particular moment in time. And somebody could say, well, you should have raised that. However, this court sits directly as an original court of original jurisdiction for determining this issue. And there's a well-stated Second Circuit case law which says, you have the right to make this determination, and I'm not asking you to do anything untoward by pointing out this regulation to you. There's a very interesting point that was made by the Corporation Counsel's Office on behalf of DOE in a footnote in their brief. They actually state that under 3020A, they can't punish a tenured employee for a violation of the CSA contract. Yet, they say that even though they might not have ever brought charges against her had she continued to work, she can still be blacklisted without any notice whatsoever, which is what occurred here. And I think that's kind of a very telling admission by the Corporation Counsel in their notice, because the rights under 3020A and the CSA contract are very clear that you can't punish a tenured employee without due process, without filing the charges. And if they had filed charges, which they should have done, if they were going to do it, they should have done it before she retired. It's not like they weren't on notice that she was retiring. She was required. Suppose a retired teacher is publicly accused of some form of misconduct. You know, we often hear, and this is of course not your case, but we often hear of teachers accused of sexual misconduct with students long after the event, when someone in their adulthood decides to reveal something that they claim happened to them. Suppose a retired teacher is accused of such misconduct while he or she was a tenured teacher, but now they're retired. The Commissioner puts them on a blacklist. Would there have to be a notice and hearing, in your view, of that? I think there would certainly have to be notice and, yes, a hearing. And that's because the person was once a tenured teacher and retains this right under the Chancellor's regulation to be a substitute. I think the Chancellor's regulations cannot be looked in isolation of 3020A and the Union contract. It's part of a package. And that package results in a property right, which cannot be impinged upon without due process. Now, of course, you know, a sexual allegation of the kind Your Honor is suggesting is a very charged... It's very serious, I understand. But all the more reason why there should be a hearing before somebody gets accused of it would be the argument. I understand that. Right. But I'm just trying to get at, even if the allegations arise after the person has retired, you would be basically taking the same position. If they... And going with Your Honor's analogy, is your analogy one that the sexual activity took place while the person was employed? Yes. I would think that they would need certainly a charge like that. I mean, then we get into a liberty interest of a stigma plus. Because nobody would say that the publication, let's say, of a charge like that and putting somebody on a list without an opportunity to be heard, we get into a liberty interest. Here, I'm just talking about a property interest. Fair enough. I have your answer. Thank you. Good morning, Your Honors. May it please the Court, I am Meryl Holt and I represent appellees in this matter. The Court has really hit on the fundamental inquiry in this case, which is does plaintiff have a protected property interest in either a security clearance with or not? Although opposing counsel would make this case about whether proper procedures were adhered to, this question is secondary to that threshold inquiry. Whatever right she had had as an active tenured employee at DOE was terminated with her voluntary retirement. And she is unable to point to any provision in the state education law, the Chancellor's regulations or the collective bargaining contract that establishes any such right in retirement. Well, now, the Chancellor's regulation, let's assume for the moment that it does not give a right to actually work as a substitute because it's in the discretion of somebody, a principal or someone, to decide whom to invite. Does that not at least give a right to be considered? It says you're somebody who may be recalled. It's permissible for whoever, principal, Chancellor, to recall you to service. But now, Ms. Richardson is not eligible to be recalled based on being on the ineligible list. Does that not deprive her of something, if not a right to actually be in any particular classroom or any classroom at all, at least of a right to be appointed by a principal who thinks she's a good teacher who should be recalled to substitute service? As an initial matter, a plaintiff isn't seeking substitute service. She's seeking prospective employment with the agency. But in terms of your question about substitute service, she was, in fact, given an interview for the security clearance and given an opportunity to explain her record and did not take that opportunity to defend herself. I think, I mean, we're on a motion to dismiss, so there's been no discovery in this case. However, my understanding from speaking with the client is that there is no purported ineligible list. What happened in this case is that DOE placed a flag on plaintiff's application in the event that she ever tried to apply for future employment with DOE or with a DOE vendor. And given that plaintiff had retired during the pendency of the proceedings against her, this was, in fact, the only avenue available to DOE under the circumstances. All they could do was look at the substantiated misconduct and then place a flag so that she Well, I've encountered this before in other cases, this question of whether there is an ineligible list. And I take it the department's position is there is not a literal list. There is no thing that the principal in the substitute situation or the vendor here would consult and say, I have to, before I hire this person, I have to check and see if Lynch is on the list. On the other hand, there is something, the flag, that if the person with the flag makes an application, it's going to be noted that they had this incident, this investigation, right? And the upshot of that, of knowing that, is that the person will be ineligible for a security clearance. Am I wrong about that? There is discretion, which is why she was brought in to interview and presented with the record. And that's the point at which a plaintiff alleges she first found out about the substantiated misconduct. Now, to the extent that An interview with whom? With the vendor or with the department? With Human Resources at DOE for the security clearance. Of Human Resources of the DOE for the security clearance? Yes, because she was seeking employment with a DOE vendor for which a DOE security clearance was necessary. And the job that she was applying for wasn't, in fact, substantially similar to the job for which she had substantiated findings against her. So it was well within DOE's discretion and perhaps their obligation to pay attention to those findings and have them weigh in to the determination that was made to deny her the security clearance. I'd also, on the point of the state education law 3020A, note that it's not clear that that law would have applied to this case, but the plaintiff now attempts to use that statute as both a sword and a shield. She retired, which meant that that law, which applies where disciplinary proceedings are brought against an active, tenured employee. It entitles you to formal disciplinary charges in a formal process. Precisely. So it's sort of a case of where you can't have it both ways because DOE couldn't bring any charges against her after she had retired because she was no longer an active, tenured employee. But conversely, she could no longer exercise her potential procedural rights under that statute. And cases such as Abramson and Finley show that there is no constitutionally protected right in prospective government employment. Is there any regulation or anything cited or available that governs the security clearance procedure? In other words, if anyone, be they a former employee, a retired employee, or someone who's never had any contact with the DOE, applies for a job with a vendor and requires a security clearance, is there any regulation that says what has to happen? Can the department deny a security clearance in its own discretion, or is there some limitation on their ability to do that? I haven't exhaustively reviewed all of the regulations that could potentially pertain to security clearances, but as far as the record in this case, there's nothing that would circumscribe the discretion of DOE to deny a security clearance under the circumstances of the case in question. Unless this court has any further questions, we respectfully ask the court to affirm. Just a couple of quick points, if I may, Your Honor. Counsel just suggested there wasn't an ineligible list. I would direct the court's attention to 829, where the recommendation, the challenge recommendation here, where it says, is the recommendation of this office that Rosemary Richardson be placed on the ineligible list. So the suggestion that there is no ineligible list is not correct. Well, it's an interesting question about what the reality of the world is, but I guess you'd say, you've certainly alleged there's an ineligible list, and you even have documentation that you just referred to of such a reference. So if that's not what it is, maybe that's a factual issue that needs further development. And I would say one other thing, if I might, that Section 3020A does not speak to the fact that when we talk about a retiree's rights under 3020A, 3020A applies to people who continue to enjoy the benefits of tenure. And I would say to this court— It's just enjoying the benefits of tenure. So one question is whether someone who is retired is continuing to enjoy the benefits of tenure. And the statute in other provisions specifically refers to retirees as a different class of people than those, by my reading of the statute, who are enjoying the benefits of tenure. I hear what Your Honor is saying. However, when combined with the Chancellor's regulation, which gives a continuing right to enjoy the benefits of being hired under certain circumstances, that is a benefit of tenure. And so, therefore— She wouldn't have it if she hadn't been— Correct. Correct. A non-tenured teacher who resigned would not have that benefit, or some other person who wanted to be a substitute teacher wouldn't have that. Correct. And this all goes to whether Ms. Richardson continued to have a property right. And we submit she did. Now, one last question, just to make sure I'm understanding the record. Your client did know that she was under investigation at the time she retired, correct? No, I don't think that's—there's nothing clear in the record of that. They say a lot of things in their brief, but there's nothing that indicates that, Your Honor. The time limits for them to have brought charges had elapsed. I'm not understanding the argument about the time limits. There's nothing that I can find in the CBA that requires that an investigation conclude within 180 or 210 days. There's a mandate that the Department shall review investigations that are open that long, and the employees are entitled to notice of the investigation's results. But I couldn't find—and it would seem a little surprising to me to find that there's a mandate that an investigation conclude within a specified period. Clearly, there's no mandate that it conclude within that time. However, that time limit, which is contained in the union contract, presupposes that they're going to act within the time limit set forth there. And one of the ironies of this case, one of the charges that were brought up against Ms. Richardson was that she wasn't adhering to certain time limits involving CSE cases. And here, you have the DOE not adhering to time limits that are contained in the union contract. I may have misunderstood what you just said, but I thought the chronology was this. In October 2011, they opened the investigation. On December 16, 2011, she was interviewed and informed of the charges against her, yes? I'm not quite sure that it's clear that she was informed of the complete charges. She knew she was under investigation. And she didn't receive anything further. Ever. Well, but she retired on July 1st. Correct. So, unless, so she had no, she was never informed, we've concluded the investigation and exonerated you or anything like that. Why shouldn't she have assumed, why wasn't it reasonable for her to assume that she was still under investigation? I don't think it's, I don't think you can conclude that she should have assumed either she was under investigation or she was not under investigation. She could still be working there. You are told you're under investigation, it's a serious matter, obviously. And if you don't inquire, is it over, is it closed, you instead retire. I don't understand why that is not, why is it not clear that she had no basis for not believing she was still under investigation? I didn't say that she had no basis. She had no basis one way or the other to conclude that she was continuing under investigation or not. Counsel for the DOE has suggested that had she continued to work in their footnote, they say she might never have been faced with And if she was still working to, excuse me. That's in the context of saying there's an investigation ongoing. If she'd been exonerated, they would not have proceeded with formal charges. If she, if the charges are substantiated, they would have proceeded with formal charges. But the fact that she retired in July after being informed that she was under investigation in November meant that the city, from the city's perspective, they never had the process. This is Finley's point. If you retire while you're under investigation, the city never has the opportunity to give the tenured employee the, Finley was untenured, but they don't seem, it doesn't seem to turn on that, but the process that would be due. Well, I think when we talk about that and what Ms. Richardson could do or should have done or what the DOE could have done, there's nothing in the regs, there's nothing in the process of the conclusion of this investigation that stated, that started while she was there. And then she would have had the right to contest that finding even after she retired. She still had union rights. She still had the right to be represented by the union. And she could have commenced a timely Article 78 proceeding in 2011. And if she would have prevailed on that, she would not have suffered the deprivations and the loss of income that she suffered as a result of their, their, their putting her on an ineligible list without ever telling her, uh, that, that, that, that, that, that that occurred. Could she have filed an Article 78 proceeding when she was denied the security clearance? She could have filed it. And in fact, if she loses here, in truth, she still has the right to file an Article 78 because the Article 78 was part of her complaint. And the reason the court didn't ask, exercise supplemental jurisdiction was that the base, it concluded that the federal, that the basis for federal jurisdiction had gone away because the court determined that she had no, she had no constitutional right. However, she still could timely file an Article 78, but we're here to vindicate her constitutional rights. And, and, and, and, and if, if you remand the case, we would also consider, you know, argue to the court below that supplemental jurisdiction would be appropriate. Thank you both for your argument, your full argument. Thank you, Your Honor.